Juanita ROSA, Plaintiff,

v.

Caspar WEINBERGER, as Secretary of Health, Education and Welfare of the United States, Defendant.

No. 73–C–840.

United States District Court,
E. D. New York.

Sept. 23, 1974.

John C. Gray, Jr., Brooklyn Legal Services Corp. B, for plaintiff; David S. Preminger, Brooklyn Legal Services Corp. B, Brooklyn, of counsel.

David G. Trager, U. S. Atty., E. D. New York for defendant; Thomas A. Illmensee, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, Dept. of Health, Education and Welfare New York City, of counsel.

BARTELS, District Judge.

This is an action by Juanita Rosa, claimant, brought pursuant to 42 U.S.C. § 405(g) to review the decision of an Administrative Law Judge ("ALJ") denying her application for Social Security disability benefits under 42 U.S.C. § 423. Claimant alleges that the ALJ violated her right to due process by failing (1) adequately to notify her of her right to be represented by retained counsel, and (2) to protect her as an unrepresented claimant. Both parties have moved for summary judgment on the basis of the administrative record submitted to this Court. We find that the ALJ's decision was not based on substantial evidence, that he applied an incorrect legal standard and that the proceedings were not properly conducted.

An application alleging disability as of September 21, 1970, due to dizziness, cerebral anoxia and intestinal disorders was filed by claimant on January 22, 1971. The Division of Evaluation and Authorization and then the Division of Reconsideration both rejected it. There was a hearing on June 12, 1972, and on August 8, 1972 the ALJ held that claimant's condition did not meet the disability standard set out in 42 U.S.C. §§ 416(i), 423(d) and 20 C.F.R. § 404.1501, and that she was able to perform her prior occupation of hospital housekeeper. The Appeals Council affirmed this decision on April 12, 1973.

*Facts*

Claimant is a 61-year old woman with a fifth grade education who speaks no English. Since emigrating from Puerto Rico in 1946, she has been steadily employed as a domestic, a cafeteria worker, or as a hospital housekeeper, a job she held from 1959 until 1970. Between May, 1970 and the date of the hearing, slightly more than two years, claimant had been confined to various hospitals at least five times for substantial periods of time. She underwent surgical repair of an incisional ventral hernia in May, 1970, and in September of that year was treated for a chronic duodenal ulcer. In December, 1970, an exploratory laparotomy and lysis of postoperative bowel adhesions were carried out; on January 18, 1972, claimant was hospitalized for evaluation of upper gastrointestinal bleeding; on March 2, 1972, a cholecystectomy and common duct exploration were performed and on March 28, 1972, an upper gastrointestinal series was carried out. After her administrative hearing but before review of that hearing by the Appeals Council, claimant underwent removal of a cataract.

The ALJ was in possession of two medical reports on claimant's condition. The first was made by her personal physician, Dr. Fiorentino, who concluded that she was "totally disabled from performing regular duties because of recurrent bouts of dizziness occasioned by cerebral anoxia, and bouts of incomplete intestinal obstruction secondary to adhesions." The other report was made by Dr. Gilbert, a neurologist to whom claimant was sent by the Social Security Administration. Dr. Gilbert concluded that claimant suffered from severe vertigo but stated only that it was his "impression" that her "symptoms appear to be solely subjective." The ALJ took this to mean that Dr. Gilbert was unable to find "objective evidence of neurological disease or disturbance." Neither physician testified at the hearing.

After the ALJ announced his decision, claimant sought and was granted reconsideration by the Appeals Council, who sent her to Dr. Rubinowitz, a psychiatrist and neurologist, for a further medical examination. Dr. Rubinowitz administered a neurological as well as a sensory examination and concluded that the claimant was suffering from "Spinal Arthralgia—moderate to severe" and that the prognosis was "fair with intensive physiotherapy." The Council nevertheless affirmed the ALJ's decision concluding that although the claimant had a back problem, it did not limit neck or spinal motion and there was no loss of either the upper or lower extremities.

*Substantial Evidence*

■■ The decision of the ALJ and the Appeals Council must be affirmed if supported by "substantial evidence." Herbst v. Finch, 473 F.2d 771, 774 (2d Cir. 1972); Gold v. Secretary of Health, Education & Welfare, 463 F.2d 38, 41 (2d Cir. 1972); Franklin v. Secretary of Health, Education & Welfare, 393 F. 2d 640, 642 (2d Cir. 1968); Kerner v. Flemming, 283 F.2d 916, 921 (2d Cir. 1960); Adams v. Flemming, 276 F.2d 901, 903 (2d Cir. 1960); 42 U.S.C. § 405 (g). See Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 477–478, 71 S.Ct. 456, 95 L.Ed. 456 (1951). "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting*, Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); Scott v. Celebrezze, 241 F.Supp. 733, 736 (S.D.N.Y. 1965). This is especially true in light of the intent of the Social Security Act which is inclusion rather than exclusion, thus requiring a liberal construction. Herbst v. Finch, *supra*, 473 F.2d at 775; Gold v. Secretary of Health, Education & Welfare, *supra*, 463 F.2d at 41; Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969); Osserman v. Gardner, 259 F.Supp. 368, 371 (S.D.N.Y.1966).

The ALJ considered the reports of two physicians. The claimant's personal doctor, Dr. Fiorentino, stated that claimant was totally disabled. The other doctor, Dr. Gilbert, stated only that it was his "impression" that her symptoms were subjective. He made no finding of non-disability. While Richardson v. Perales, *supra*, holds that a doctor's report standing alone may amount to substantial evidence of disability, *it need not always amount to such*. Gold v. Secretary of Health, Education & Welfare, *supra*, 463 F.2d at 43 n. 10; see Mullen v. Gardner, 256 F. Supp. 588, 591–592 (E.D.N.Y.1966). In this case it does not. Dr. Gilbert's report does not state that claimant is not disabled. His only finding—or rather his "impression"—was that her symptoms were subjective. Such a finding would not alone be substantial evidence of claimant's non-disability. In this case the report of the treating physician also exists and states that claimant is totally disabled.

In view of the fact that there was no testimony that Dr. Fiorentino is an abdominal surgeon and most of the claimant's hospitalizations arose from abdominal problems, and Dr. Gilbert examined the claimant only once as compared with the many examinations conducted by Dr. Fiorentino between 1969 and 1972, we believe that Dr. Fiorentino's report should have been given more weight than Dr. Gilbert's, since the determination of the treating physician is entitled to more weight than that of a doctor who has only seen the claimant once. Floyd v. Finch, 441 F.2d 73, 107 (6th Cir. 1971); Jenkins v. Celebrezze, 335 F.2d 6, 8 (4th Cir. 1964); Robinson v. Richardson, 360 F.Supp. 243, 250 (E. D.N.Y.1973); Claussell v. Secretary of Health, Education & Welfare, 337 F. Supp. 717, 722 n. 4 (S.D.N.Y.1972); Wissmiller v. Finch, 307 F.Supp. 868, 873 n. 3 (W.D.Mich.1969); Teague v. Gardner, 281 F.Supp. 43, 48 (E.D.Tenn. 1968); Mullen v. Gardner, *supra*, 256 F.Supp. at 590–591. We do not believe that the evidence which has been adduced is substantial enough to support the ALJ's finding.

### Objective v. Subjective Evidence

The ALJ, in reaching his conclusion, refused to accept any subjective evidence. Claimant, who has labored at unskilled jobs for many years now, is the very antithesis of a malingerer. She remained at her first job for about ten years and kept her second job for about the same period of time until her employer shut down. She then took a position with Mary Immaculate Hospital which she kept until her medical problem overwhelmed her. It should be noted that claimant's hospital records indicate that she does indeed have very real and severe medical problems. The ALJ, however, decided that "[t]he claimant is not subject to any medically determinable physical or mental impairment or combination thereof, which meets the statutory standard of disability." In so doing he relied on Dr. Gilbert's report that claimant's problems were subjective and that the doctor had reported no objective findings of neurological disease or disturbance. However, even pain, unaccompanied by any objective symptoms may be sufficient to support a finding of disability. Miracle v. Celebrezze, 351 F.2d 361, 374–377 (6th Cir. 1965); Ber v. Celebrezze, 332 F.2d 293, 298–299 (2d Cir. 1964); Spivak v. Gardner, 268 F.Supp. 366, 372 (E.D.N.Y. 1966); Lugo v. Gardner, 253 F.Supp. 721, 725 (S.D.N.Y.1966). Objective medical evidence is not the only basis for a disability determination. "While a finding of disability must, under the 1967 amendments, be supported by some medical evidence, it is not necessary that the claim be established by *objective* medical evidence." Dunn v. Richardson, 325 F. Supp. 337, 343 (W.D.Mo.1971). In fact, it is even unnecessary that a diagnosis be supported by objective symptoms. Flake v. Gardner, 399 F.2d 532, 540–541 (9th Cir. 1968); Bittel v. Richardson, 441 F. 2d 1193, 1195 (3d Cir. 1971); Whitt v.

Gardner, 389 F.2d 906, 909 (6th Cir. 1968). Here there was both objective and subjective medical evidence to support Rosa's claim. Since the ALJ refused to consider claimant's subjective evidence, the case must for this reason also be remanded.

### The Conduct of the Hearing

■ ■ The regulations providing the standard of conduct to be adopted by the ALJ at the hearing require him to "inquire fully into the matters at issue . . .." It has been held that where the claimant is unrepresented by counsel, the ALJ must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited. Floyd v. Finch, *supra*, 441 F.2d at 100; Stewart v. Cohen, 309 F.Supp. 949, 956 (E.D.N.Y.1970); Coyle v. Gardner, 298 F.Supp. 609 (D.Haw.1969); Hennig v. Gardner, 276 F.Supp. 622 (N. D.Tex.1967). This the ALJ did not do.

In the proceedings there were only two witnesses, the claimant and her daughter. The ALJ sought information concerning claimant's personal and medical history; however, the questions were cursory and rarely were the necessary follow-up questions asked. When claimant stated that she had recently lost a considerable amount of weight, no further inquiry took place. When she indicated that she had been treated for arthritis, the question was not further explored. When she stated her complaints in vague and general terms, no specification was requested. Moreover, though pain is an important factor in determining whether disability exists, the claimant spoke of pain in her stomach and back but was not questioned further though the ALJ had the hospital records before him. Finally, when the claimant testified that she bled through the mouth and her legs were unsteady, this line of inquiry was dropped.

A searching examination of the record as required by Gold v. Secretary of Health, Education & Welfare, *supra*, 463 F.2d at 43, has convinced us that the ALJ did not reach an independent determination of the merits of the claim but relied upon the conclusions previously reached administratively by the Division of Evaluation and Authorization of the Social Security Administration. See Hayes v. Celebrezze, 311 F.2d 648, 653 (5th Cir. 1963).

■ One other fact is worthy of note. The claimant by both a notice and a Social Security Administration Pamphlet BHA–1 was advised by the Secretary that she was entitled to be represented by counsel but it was also explained that "25 percent of your back benefits will normally be withheld for payment to your attorney upon approval of his fee." The notice was in English although the claimant was notified in Spanish at the hearing that she was entitled to be represented by counsel and she understood this to be so. While the pamphlet suggested she seek advice from the Legal Aid Society, it did not remove the impression that 25% of her recovery would have to be paid for legal representation. Both Legal Aid and Brooklyn Legal Services were available to represent plaintiff without cost and the Secretary should have notified claimant of this fact. We do not believe, therefore, that she knowingly waived her right to be represented by counsel.

For all the reasons stated herein, this case is remanded for a new hearing to be conducted in accordance with this opinion.

So ordered.